WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Aaron Gordon Holmes, Jr.,<br><br>　　　　　　Defendant. | No. CR-21-00192-001-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements Obtained Pursuant to Illegal Search, (Doc. 29), to which a response, (Doc. 33), and reply, (Doc. 41), were filed. An evidentiary hearing was held on March 4, 2022. After consideration of the pleadings, evidence, arguments, and relevant caselaw, the Court will deny the motion for reasons explained below.

**I.　　BACKGROUND**

Defendant Holmes, Jr., is charges with two counts of distribution of child pornography and one count of possession of child pornography. (Doc. 29 at 1.) Count 1 alleges distribution of child pornography on the social medica platform Facebook, and Count 2 alleges distribution on the social media platform Kik. (*Id.*) Count 3 alleges that Defendant possessed child pornography images located on a cell phone and an SD card on the cell phone—both seized pursuant to a search warrant. (*Id.*)

These charges stem from two separate investigations that eventually overlapped. On January 17, 2021, the National Center for Missing and Exploited Children ("NCMEC")

received a referral from Facebook. Facebook reported apparent child pornography and included three image files in the referral. (*Id.*) The report indicates that the suspected child pornography images' hash value[1] matched that of a previously reported child sexual exploitation image on NCMEC's "hash list." Facebook did not look at the file. Facebook also provided the following information: (1) the IP address from which the files were shared was 38.22.13.30; (2) the email address associated with the Facebook account was aaron.holmes93@yahoo.com; (3) the screenname created by the user was "Aaron Sirsmokalot;" (4) the "[e]stimated location on January 17, 2021," was Phoenix, Arizona; and (5) the suspected child pornography that was shared was also accompanied a "chat" in the Facebook Messenger. That chat read as follows:

> Holmes: What I'd [sic] we can train our daughter to handle that
>
> Recipient: Hell NO!
>
> Holmes: Ok.

(Id. at 3; see Doc. 29-1 at 5.)

The referral was assigned to Agent Steele of the FBI. Agent Steele first received the referral on February 3, 2021 and opened the referred images to verify if they contained child pornography. Agent Steele then served a search warrant for the full account information on Facebook on February 9, 2021. Next, Agent Steele served an administrative subpoena to the internet service provider, Gila River Telecommunications, to determine information about the IP address of 38.22.13.30.

---

[1] "A hash value is (usually) a short string of characters generated from a much larger string of data (say, an electronic image) using an algorithm." *United States v. Wilson*, 13 F.4th 961, 964 (9th Cir. 2021) (quoting *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016)). It is computer generated and serves to process large amounts of data. *See United States v. Reddick*, 900 F.3d 636, 637 (5th Cir. 2018) ("In the words of one commentator, '[t]he concept behind hashing is quite elegant: take a large amount of data, such as a file or all the bits on a hard drive, and use a complex mathematical algorithm to generate a relatively compact numerical identifier (the hash value) unique to that data.'" (quoting Richard P. Salgado, *Fourth Amendment Search and the Power of the Hash*, 119 Harv. L. Rev. F. 38, 38 (2005))). Thus, "[a] hash value has been described as 'a sort of digital fingerprint.'" *United States v. Miller*, 982 F.3d 412, 417 (6th Cir. 2020) (quoting *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016)).

The second referral came from Kik around September 13, 2020, and was assigned to Agent Rose. The referral from Kik reports that a person at Kik had already viewed 10 of the files sent to NCMEC. The referral also provided the following information: (1) the IP address from which the files were shared was 38.22.13.30; (2) the email address associated with the Kik account was angel.l.espinoze05@gmail.com; (3) the screenname created by the user was "mistersir456"; and (4) the estimated location was Phoenix, Arizona. (Id.)

After Agent Rose confirmed that the already viewed files contained child pornography, she started her investigation. Agent Rose obtained a 30 day report for the IP address showing that Kik was accessed almost every day between August 21, 20220 and September 17, 2020. She then sent an administrative subpoena to Gila River Telecommunications for the subscriber information related to the IP address. That subpoena remained unanswered, so she sent a second administrative subpoena. At some point, she learned that Agent Steele was going to hand deliver an administrative subpoena to Gila River Telecommunications and Agent Rose asked Agent Steele to serve her subpoena as well. Upon return of the information, the agents discovered they were investigating the same IP address. Gila River Telecommunications reported that the IP address account holder was Lisa Howard at the residential address of 16646 S. Saint Johns Rd., Komatke, AZ. Agent Rose reassigned her case to Agent Steele for follow up.

A search warrant was drafted to search the residence at 16646 S. Saint Johns Rd. using only information from the Facebook referral. Agent Steele had done surveillance at the residence and worked with Gila River Police to determine who lived there. At the time of the search, she knew that Lisa Howard and Defendant lived at the home and that Defendant had minor children. On February 11, 2021, search warrants were obtained and executed at Holmes' residence. Defendant was at the residence, advised of his *Miranda* rights, and interviewed. Holmes was questioned about both his Facebook and Kik accounts and made statements related to both.

## II. LEGAL STANDARD

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See Hudson v. Michigan*, 547 U.S. 586, 593 (2006) ("Until a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects' from the government's scrutiny." (quoting U.S. Const. amend. IV)). It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

When a search or seizure is conducted without a warrant, the government must establish that it did not violate the Fourth Amendment. *See United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994). Under the exclusionary rule, evidence resulting from an unconstitutional search or seizure cannot be admitted as proof against the victim of the search, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

## III. DISCUSSION

Defendant argues that when Agent Steele opened the attachments and viewed them, she violated Defendant's Fourth Amendment rights. Consequently, all evidence seized from Facebook and Defendant's person and residence must be suppressed because they all are all resulting from the warrantless search. Defendant's argument relies on the Ninth Circuit ruling *in United States v. Wilson*, 13 F.4th 961 (9th Cir 2021). There, the Ninth Circuit held that an officer who viewed files, which were part of a Google referral to NCMEC, had violated the Fourth Amendment because no one at Google had opened or viewed the referred files. *Id* at 964.

The Government does not dispute that the *Wilson* Court's holding requires this Court to find that Agent Steele's actions constituted a search when she opened the images to verify that they contained child pornography. However, the Government argues that the

1  Motion to Suppress should be denied because there are two applicable exceptions to the
2  exclusionary rule—the good faith exception and inevitable discovery doctrine. (Doc. 33
3  at 6, 13)

### A. Good Faith Exception

The good faith exception to warrantless searches applies where binding appellate precedent specifically authorizes the search. *United States v. Cano*, 934 F.3d 1002, 1021 (9th Cir. 2019). But the binding appellate precedent does not have to be an exact factual match for the good faith exception to apply. *Id*.

Here, the Government points to *United States v. Jacobsen*, 466 U.S. 109 (1984) as binding appellate precedent. The Government acknowledges that, in the Ninth Circuit, there was no binding precedent matching this factual scenario. However, there were two cases from other circuits that—because of their analysis of *Jacobsen* and the private-search doctrine discussed therein—specifically authorized an agent to open files based on hash value matches. *See Miller*, 982 F.3d at 418 ("[The hash value's accuracy] created a "virtual certainty" that the files in the Gmail account were the known child-pornography files that a Google employee had viewed. Given this (unchallenged) reliability, Jacobsen's required level of certainty is met."); *Reddick*, 900 F.3d at 639 ("[The government agent's] visual review of the suspect images—a step which merely dispelled any residual doubt about the contents of the files—was akin to the government agents' decision to conduct chemical tests on the white powder in *Jacobsen*.").

The *Jacobsen* Court explained that, under the private-search doctrine, "the legality of the governmental search must be tested by the scope of the antecedent private search," and the government's search cannot exceed the search conducted by the private party. 466 U.S. at 116. In *Jacobsen* DEA agents searched a Federal Express package that had been partially opened by Federal Express employees. The agents visually inspected the contents of the package and then performed a field test on the white powder to determine if it was cocaine, which they confirmed it was. The Supreme Court opined that "Congress has decided[—]and there is no question about its power to do so[—]to treat the interest in

'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest." *Id.* at 123. Thus, the Court concluded that the agents' actions did not violate the Fourth Amendment because "[o]nce frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* at 117.

Here, the private search by Facebook revealed suspected child pornography involving a prepubescent child engaged in sexual activity. Facebook's search rendered Defendant's information nonprivate. Consequently, Agent Steele's actions where the same as DEA agents' in Jacobsen: testing the file to confirm that it was contraband. But Defendant argues that the Government's search exceeded the scope of the private search not only by opening the image identified as a hash match by Facebook but also by viewing a second image included in the referral but that did not include a hash match.[2] The Court agrees with this latter argument and finds that although opening the file with a hash match may be supported by the good faith doctrine, the opening of the second file is not.

### B. Inevitable Discovery Doctrine

The inevitable discovery doctrine is an exception to the exclusionary rule. *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000). It is the government's burden to show inevitable discovery by a preponderance of the evidence. *Id.* "The government can meet its burden by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Cano*, No. 19-50240, 2021 WL 3878652, at *1 (9th Cir. Aug. 31, 2021) (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989)).

Without looking at the photos, Agent Steele knew that one image matched a known

---

[2] Defendant also argues that because the District Court in *Wilson* found there was no good faith exception if the agent's actions constituted an illegal search, that the exception doesn't apply here. However, the good faith exception argued in *Wilson* was based on the fact that the agents had a warrant for the search, which is not the same argument made here—reliance on binding appellate precedent.

image of child exploitation, and that Facebook categorized the image as A1, which indicates a prepubescent minor is involved. Agent Steele was also concerned by the text language provided by Facebook, which suggested the parties had a daughter who could be in danger. Through surveillance, open-source investigation, and work with Gila River Police, she knew that Defendant had minor children and that he lived at the address on S. Saint Johns Rd.—the street address register to the IP address 38.22.13.30, which was the IP address in Facebook's report.

Agent Steele became aware of Agent Rose's investigation of verified child pornography, involving Kik, using the same IP address. Agent Rose testified that, if she had not turned her investigation over to Agent Steele, she would have proceeded with her investigation. That investigation would have included surveillance and database checks to identify residents of the home on S. Saint Johns Rd., a search warrant for the residence, interviewing everyone at the home, forensic examination during the search to preview devices, and seizure of devices for forensic examination back at the FBI.

Here, it is clear that, by following routine procedures, Agent Rose would have inevitably ended up with the same evidence.

**IV.  CONCLUSION**

The Government has met its burden to show that the evidence would inevitably have been obtained, therefore,

**IT IS ORDERED denying** Defendant's Motion to Suppress Evidence and Statements Obtained Pursuant to Illegal Search. (Doc. 29).

Dated this 21st day of March, 2022.

Honorable Susan M. Brnovich
United States District Judge